1879.] PEO. ex rel. SUPERVISORS et al. *v.* HADLEY et al. 337

Statement of case.

unsupported by evidence, and we find no error of law calling for a reversal of the judgment.

The judgment should therefore be affirmed.

All concur.

Judgment affirmed.

---

THE PEOPLE ex rel. THE BOARD OF SUPERVISORS OF WEST-
CHESTER COUNTY et al., Respondents, *v.* STERLING G.
HADLEY et al., Assessors, etc., Appellants.

Under the act of 1876 (chap. 49, Laws of 1876), "in relation to the equalization of assessments," the State assessors are authorized, and it is their duty, upon appeal by a town to determine: 1st. Whether the town appealing has suffered injustice, as compared with other towns in the county; 2d. Whether such town shall have a deduction from its valuation, and the amount thereof; 3d. Upon what other town or towns such deduction shall be placed, and the portion thereof which shall be placed on each. The comparison is not between the town appealing and the residue of the county as an entirety, but between it and the other towns as distinct and separate organizations.

For the purpose of performing this duty, it is essential that said assessors shall take into consideration the valuation of all the towns of the county separately, and if they find injustice has been done to the appealing town by an excessive valuation, as compared with some of the towns, they may remedy it by thus placing the excess upon those towns; and this, although other towns which have not appealed, have suffered a like injustice: for the purpose of correcting the injustice complained of these towns cannot be regarded.

It is no objection to a decision made by said assessors in pursuance of the statute that it does not purport to be certified to the board of supervisors of the county.

Nor is it an available objection, where the decision was forwarded by mail in due season, that it was not filed with the clerk of said board before the beginning of the next annual meeting.

The State assessors are not required upon such an appeal to take testimony as to the amount and value of the personal property in the towns; as a board of supervisors in making equalization, are confined to the valuation of real estate, the State assessors have no authority beyond this.

The legislative intent in passing the act was simply to regulate appeals, not to enlarge the jurisdiction of the State assessors.

*People ex rel. Bd. Suprs. West. Co. et al.* v. *Hadley et al.* (16 Hun, 113), reversed.

(Argued February 6, 1879; decided March 18, 1879.)

. Appeal from judgment of the General Term of the Supreme Court, affirming a judgment of Special Term, which reversed the decision of the State assessors rendered by them on appeal by the supervisor of the town of Yonkers, from the equalization of assessments made by the board of supervisors of Westchester county for the year 1876, which proceedings were brought up for review by *certiorari.* (Reported below, 16 Hun, 113.)

The facts appear sufficiently in the opinion.

*Ralph E. Prime,* for appellants. The power and limits of the investigations of the State assessors are appellate, and appellate only. (Laws 1859, chap. 312, § 13; Laws 1873, chap. 327, § 1; Laws 1874, chap. 351, §§ 1, 2, 3; Laws 1876, chap. 49, §§ 1, 2, 3; 1 R. S., 395, § 31; *People* v. *Hillhouse,* 1 Lans., 87; *People* v. *Hadley,* 1 Abb. [N. C.], 441.) The full performance of duty by public officers is always presumed until the contrary is shown affirmatively. (*Arent* v. *Squire,* 2 Daly, 347; *Wood* v. *Moorehouse,* 45 N. Y., 368; *Cooper* v. *Bean,* 5 Lans., 322.) The statute under which the State assessors proceeded, being for public and beneficial purposes, and wholly remedial in its scope, should be liberally construed. · (*Huddler* v. *Golden,* 36 N. Y., 446; *Tallman* v. *R. R. Co.,* 4 Abb. Dec., 351; *Sharp* v. *N. Y.,* 31 Barb., 572; *Scofield* v. *Collins,* 3 Corwin, 89; *Murray N. Y. C. R. R. Co.,* 3 Abb. Dec., 339; *Ex parte Wash. Park.,* 52 N. Y., 131; *Sickles* v. *Sharp,* 13 J. R., 497; *People* v. *Bartow.* 6 Cow., 290.)

*C. Frost* and *Wm. Romer,* for respondent. Errors in the proceedings before the State assessors, in admitting or rejecting evidence, or in the principles on which they acted in making their decision, may be reviewed on *certiorari.* (*People* v. *Bd. of Assrs.,* etc., 40 N. Y., 154; *People* v. *Sanders,* 3 Hun, 16.) The State assessors are creatures of the statute and must be held to a strict compliance with all its requirements. (*Jones* v. *Reed,* 1 J. Cas., 20; *Loomis* v. *Brown,* 22 How. Pr., 364.) The decision of the State assessors failed to comply with the requirements of the statute.

(Laws 1876, chap. 49, § 3; Laws 1859, chap. 312, § 13; id., chap. 315; Laws 1873, chap. 327; Laws 1874, chap. 351.) The State assessors were bound to receive evidence as to the value of personal property in the several towns. (Laws 1876, chap. 49, § 3; Laws 1859, chap. 312, § 13; Laws 1874, chap. 351, § 5.)

Miller, J.   The appeal from the decision of the board of supervisors of the county of Westchester to the State assessors was made in pursuance of chapter 49 of the Laws of 1876.   The assessors decided that the board did equalize the value of real estate of the city of Yonkers in said county, at an excess of $973,717 above its proportional value, as compared with some of the towns of said county; that the tax levied and collected on said excess should be credited to the city of Yonkers, and levied and collected from certain towns, which were named, the sum specified opposite the name of each town to be levied on such town, as its proportion of said sum in the assessment and collection of taxes for the current year.   The question to be determined is as to the authority of the assessors and the construction to be placed upon the third section of the act cited, which provides : "That on the hearing or trial, the evidence should (in part) relate to the assessment and full and true value of real and personal property, and the State assessors are thereby required to determine whether or not injustice has been done to the town, ward, or city appealing, in the equalization of real and *personal* property assessed therein as compared with the *other towns, etc.,* of said county, and whether any, and if any, what deductions ought to be made from the aggregate corrected valuation of said real and *personal* property as made by the board of supervisors, and also to determine to what town or towns, etc., such deductions, if any, should be added and certify their determination in writing to the board of supervisors.".

The duty of the State assessors was to receive evidence and to determine, first, whether injustice had been done to

the party appealing, in the equalization ; second, to decide where the wrong was, what deductions, if any, should be made in the valuations ; and third, to what towns, etc., said deductions should be added, etc.  For the purpose of carrying into effect these requirements, it was essential that they should take into consideration the valuation of the city of Yonkers, as well as the valuation of all the towns separately in the county.   All of these towns were involved, and their respective valuations were to be regarded in arriving at a determination.   It was not necessary that injustice was done to Yonkers, as compared with each of the towns in the county, and quite sufficient that it appeared that such was the case, as to some of the towns.   It might well be the fact, that some of the towns were properly and justly assessed, as compared with Yonkers, while others were assessed at a less amount than was authorized.   Where the assessment was just and right in any one town or towns, it should not be interfered with, and should remain as it was.   Where, however, it was less than was justified by a proper equalization, it should be increased accordingly.   The assessors had full power and authority to determine that one town had suffered injustice, as compared with others, and that such town should have a deduction, and that such deduction should be placed upon the other town or towns which had not been fully assessed, and thus all the towns should be equalized.   The comparison to be made, in arriving at a result, is not between the town appealing and the residue of the county, as an entirety ; and the statute does not so provide ; but between the appealing town and the other towns, as distinct and separate organizations and divisions of the county.   The assessors are to determine, if they conclude that any deduction should be made, to what town or towns, ward or wards, city or cities such deductions shall be added.  It might be upon one, or some, or all of the other towns, as the assessors should conclude from the evidence was demanded, to remedy the injustice which had been done to the appealing party.

The intention of the statute evidently was to vest in the State assessors a supervision over the acts and proceedings of the board of supervisors, in reference to the equalization of assessments, and thus prevent injustice being done, as between the several towns in the county. Where the valuation was too high, they had a right to reduce it and make proper deductions, and to add to other towns, which were assessed too low, the amount deducted. From the power thus conferred, it would seem to follow that the State assessors were authorized to determine what the excessive valuation amounted to, and to direct the sums and upon what towns it should be assessed.

It is claimed that the assessors decided as to the excess as compared with some, and not all of the towns in the county. Although the decision of the assessors states that the excess stated was " above its (Yonkers') proportional value, as compared with some of the towns," and proceeds to state upon what towns, and what amounts shall be levied and collected to be credited to the city of Yonkers, the language employed will, I think, bear the interpretation not only that injustice had been done, as compared with these towns, but that it had not been done as to the others. As it was the duty of the assessors to consider all the towns, it is a fair assumption that this was done. The return to the certiorari, which, I think, is properly to be considered upon the hearing of the case, shows that the assessors arrived at the result by a comparison of Yonkers with all the towns.

It appears, therefore, that the assessors considered all the testimony, and made up and tabulated the results arrived at from such testimony in a table of equalization of the assessment rolls of real and personal property for the year 1876, and thus compared Yonkers with all the towns; and that ten of the towns suffered equal injustice with Yonkers, which could not be remedied, as they had not appealed, while the remaining towns were not assessed their proper proportion. The assessors could not well return truthfully that the injustice appeared when compared with all, for that would

include these ten towns which had been unjustly assessed. For the purpose of correcting the injustice which was suffered by Yonkers, these ten towns could not be regarded; and the excess was properly placed upon the other towns, who justly, upon a proper comparison, should be compelled to make up the excess. No injustice was done to the other towns, and the purpose of the statute to remedy the injustice to the appealing party was fully carried out.

The decision embraced the assessment rolls of both real and personal property, and cannot, therefore, be said to have been entirely an equalization of the real estate alone.

It cannot be said, I think, that the assessors erred in deciding that the sum deducted from Yonkers should be levied from a part of the towns in Westchester county, or that they were not in proportion to any assessed or corrected valuation in said towns, or that instead of designating the towns from which the deductions should be made, they should have left it to the supervisors to apportion the same, according to the taxable property in said towns. Nor is there any ground for claiming that the apportionment was purely an arbitrary one, and not in proportion to the valuation of the taxable property of such towns; for it appears to have been made on just and equitable grounds, and charged to the towns who have escaped their equal burdens of taxation.

There is no force in the objection that the decision does not purport to be certified to the board of supervisors; for it appears to have been made in pursuance of the statutes relating to the subject, and, we think, was sufficient to meet their requirements.

Nor do we think that the decision was of no avail because it was not filed with the clerk of the board of supervisors, before the beginning of the next annual session. The return shows that it was forwarded by mail, in due season, to the clerk; and this, we think, was a substantial compliance with the law.

It is said that the State assessors erred in not admitting testimony as to the amount and value of personal property

in the towns.   I think their decision, that they should not receive evidence showing that personal property existed in a town which was not assessed, presents the point whether the assessors had the power to take such testimony.   It is claimed that the third section of the act of 1876, *supra,* makes provision for evidence relating to the assessment and value of both " real and personal property," and hence, the assessors should have received the testimony offered as to the personal property.   The statute limits the determination to " the equalization of real and personal property assessed ; " and as the evident object of the act in question was to regulate the practice in appeals from the board of supervisors, and inasmuch as the board of supervisors are confined to the valuations of real estate, in making equalizations, it would seem that the State assessors had no authority beyond this. Such was the case when the appellate power was vested in the comptroller and prior to its being transferred to the State assessors by section 5, chap. 351, S. L. of 1874 ; and taking the various provisions of the act of 1876 into consideration, the intention of the Legislature appears to have been to regulate appeals from the board of supervisors, without enlarging the jurisdiction of the State assessors.   It is so held in *The People ex rel. The Supervisors of Munroe* v. *Hadley et al.* (in 1 Abb. [N. C.], 441), where the question is fully considered, and I am inclined to concur with the views there expressed by Smith, J.   There is an apparent inconsistency in section 3, in authorizing evidence as to " real and personal property," and then requiring the assessors to determine in equalizing " real and personal property assessed;" and although the latter words would seem to qualify the former, the general view taken reconciles the entire provision.

It is a difficult task to inaugurate a system which will furnish perfect equality in the assessment of personal property ; and while many reasons may be urged in favor of investing the State assessors with power, upon appeal, to inquire as to the existence of personal property omitted from the assess-

ment roll, and thus escaping taxation, the right to institute an investigation of this character should not rest upon implication or doubtful phraseology, but be conferred by express and distinct provision of law. As this was not done in the case presented, we think the assessors were right in excluding the evidence offered.

As, for the reasons stated, no error appears in their proceedings, the judgment of the General Term should be reversed and the proceedings of the State assessors affirmed.

All concur.

Judgment accordingly.