THE PEOPLE, ex rel. ABRAHAM ROBISON et al., Supervisors, etc., Appellants, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF ONTARIO, Respondent.

The provision of the act of 1873, in reference to the equalization of taxes (§ 1, chap. 327, Laws of 1873, amending the act chap. 312, Laws of 1859), providing that an appeal made by a supervisor, in behalf of his town, from any decision of the board of supervisors in the equalization and correction of assessment-rolls should be null and void in case the determination thereof was not made and filed with the clerk of the board before the commencement of the next annual session, was repealed by the provision of the act of 1876 (§ 3, chap. 49, Laws of 1876), declaring that the

State assessors shall certify their determination on such an appeal to the board of supervisors, "and forward the same by mail, within ten days thereafter, to the clerk of said board."

Where, therefore, a decision was certified and forwarded by mail to the board within ten days after it was made and signed by the State assessors, but not until after the commencement of the next annual session, and the board omitted to carry the decision into effect, *held,* that a mandamus would lie to compel the execution of such decision.

Also *held,* that the fact that the supervisors of several towns joined as petitioners for the writ was not a valid objection.

*It seems* that if such an objection is good at any time, it is only available by motion to quash the writ ; it does not affect the merits, and when the board has answered, and a demurrer to the answer has been interposed, it must succeed, if at all, upon the facts alleged by it.

*People ex rel. Robison* v. *Board of Supervisors* (17 Hun, 501), reversed.

(Argued April 22, 1881 ; decided May 31, 1881.)

Appeal from a judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 26, 1879, reversing a judgment entered upon a decision of the court at Special Term, awarding a peremptory mandamus. (Reported below, 17 Hun, 501.)

The petitioners are the supervisors, respectively, of the towns of Geneva, Phelps and Seneca, in Ontario county. In 1876 they took separate appeals to the State assessors from the determination of the board of supervisors of that county, in the equalization of assessments and the correction of the assessment-rolls of the several towns therein. The appeals were heard on the 29th of August, 1877, and submitted for decision before the 15th of September of that year. The decision was made, and signed by the State assessors on the 1st day of October, 1877, and by them certified and forwarded by mail to the clerk of the board of supervisors within ten days thereafter. The annual session of the board commenced on the 2d day of October. It omitted to carry into effect the decision of the State assessors, and on the 18th of October adjourned to the 14th of November. In the meantime, on the application of the relators, the Special Term granted an alternative mandamus, directing the board of supervisors to assemble and carry into effect the decision of

the State assessors, or show cause to the contrary, on the last Monday of October, 1877. At that time it made a return, and therein stated, as cause or reason for not complying with the mandate of the court: 1st. That the relators and the claims of the several towns were improperly joined therein; 2d. That the decisions of the State assessors were not filed with the clerk of the board of supervisors on or before the commencement of the next succeeding annual session thereof after the making and hearing of the appeals. "Wherefore," they say, "the said board of supervisors, deeming the said appeals as dismissed, refused to receive the said determinations of said State assessors." The relators demurred to this return and had judgment that a peremptory writ issue.

*W. F. Cogswell* for appellants. The court erred in deciding that the determinations of the State assessors became null and void, because the same were not filed with the clerk of the board of supervisors before the commencement of the annual session. It was sufficient that such determinations were forwarded by mail to the clerk within ten days after they were made. (Laws of 1859, chap. 312, § 13, p. 705; Laws of 1873, chap. 327, p. 464; Laws of 1874, chap. 351; Laws of 1876, chap. 49; *Nichols* v. *Squire,* 5 Pick. 168; *Bartlett* v. *King,* 12 Mass. 537; *Morris* v. *Crockett,* 3 How. [U. S.] 429; *Mongeon* v. *The People,* 55 N. Y. 613; *The People* v. *Hadley,* 76 id. 337.) The writ was properly issued upon the relation of the supervisors of the three aggrieved towns. (*People* v. *Halsey,* 37 N. Y. 344; *People* v. *Supervisors of Sullivan Co.,* 56 id. 249; *People* v. *Collins,* 19 Wend. 56; *Commercial Bank of Albany* v. *Canal Commissioners,* 10 Wend. 25, 31; *People* v. *McLean,* 80 id. 254, 260.)

*H. L. Comstock* for respondent. The State assessors lost their jurisdiction over these appeals by failing to decide them and to cause their decisions to be filed with the clerk of the board of supervisors on or before the commencement of the annual meeting of that board in the year 1877. (Laws of

1859, § 14, chap. 312, as amended by chap. 327 of the Laws of 1873 ; 9 Edm. Stat. 596 ; Laws of 1876, chap. 49, § 3 ; 3 Edm. Stat. 378, § 13.) The act of 1876 does not in terms repeal section 14 of the act of 1859, as amended in 1873, and it is the duty of the court to reconcile the two statutes if possible, by giving such a construction to the later statute as will make it harmonize with the prior one ; if the later statute cannot be fully reconciled to a prior one, still the prior statute will be left to operate in such cases, and to such extent as will not conflict with the operation of the subsequent statute. (*Wallace* v. *Bassett*, 41 Barb. 92 ; *Williams* v. *Potter*, 2 id. 316 ; *Van Rensselaer* v. *Snyder,* 9 id. 302 ; *Brown* v. *Lease,* 5 Hill, 221 ; *Mongeon* v. *The People*, 55 N. Y. 313 ; *Smith* v. *The People*, 47 id. 330 ; *Bartle* v. *Gilman*, 18 id. 260 ; *Water-Works Co.* v. *Burkhart*, 41 Ind. 364 ; *Ansonia Brass & Copper Co.* v. *Lamp Chimney Co.*, 53 N. Y. 123 ; *S. C.*, on error, 91 U. S. 656 ; *Arthur* v. *Homer*, 96 id. 137 ; *Wood* v. *U. S.*, 16 Pet. 342 ; *School Trustees* v. *Trenton*, 30 N. J. Law & Eq. 667 ; *State* v. *Severance*, 55 Mo. 378.) The alternative writ is bad in substance, because it includes three cases, which are separate and distinct and have no connection with or dependence upon each other. (Tappan on Mand. 369 ; *Haskins* v. *Supervisors*, 51 Miss. 406 ; *Rex* v. *Mayor, etc.*, Strange, 578 ; *Rex* v. *Mayor, etc.*, 11 Mod. 382 ; *Ex parte Scott,* 8 Dowl. Pr. Cas. 328.)

DANFORTH, J. The object of the relators was to put the respondent in motion, and so enforce the performance of a public duty. It was not one of individual interest, and the right of prosecution, therefore, was not confined to a single person. Moreover, the objection that the writ includes the grievance of three separate towns, and that their several supervisors improperly unite in the complaint, does not affect the merits. If sustained, it would only lead to three writs directed to the same end, and, if good at any time, was available by motion to quash the writ ; and we concur with the General Term in the conclusion that, having submitted to answer, the

respondent must succeed, if at all, upon the facts alleged by it. (*Com. Bank of Albany* v. *Canal Com'rs*, 10 Wend. 27.)

Second. It was the duty of the respondent to receive and act upon the decisions of the State assessors, although they were not filed before the commencement of its annual session. This question was presented in the case of *The People, ex rel. Supervisors*, v. *Hadley* (76 N. Y. 337), and as it seemed plain, was shortly answered in the same way. We are now asked to reconsider it; but, notwithstanding the elaborate argument for the respondent, we see no reason to doubt the correctness of that decision. The legislative scheme under which the proceeding of the relators was had originated in chapter 312, Laws of 1859. By that act (§ 13) an appeal to the comptroller was given to any supervisor, in behalf of his town, from any decision of the board of supervisors in the equalization and correction of the assessment-rolls; it provided a method of procedure, and, without directing when it should be made or how certified or brought to the attention of the board of supervisors, gave effect to the decision of the comptroller, by declaring that any deduction should be credited in the "assessment and collection of taxes in the next following years." In 1873 (Laws of 1873, chap. 327) it was provided that "unless his determination was made and filed with the clerk of the board of supervisors on or before the commencement of its next succeeding annual session, the appeal should be null and void and be deemed as dismissed." In 1874 (Laws of 1874, chap. 351) the State assessors were substituted for the comptroller as the appellate tribunal; and in 1876 (Laws of 1876, chap. 49) it was made their duty to prescribe forms of procedure for such appeals, and regulations relating thereto and to the hearing and trial thereof; to appoint a time and place of hearing, and after notice by mail to the supervisor of the appealing town, proceed therewith "in the county where the appeal originated;" indicated the nature of evidence to be received and the matters to be determined by them. It then adds: "They shall certify their determination in writing to said board of supervisors, and forward the same by mail within ten days thereafter to the

clerk of said board, directed to him at his post-office address." These provisions apply to all appeals pending and undetermined at the time of the passage of the act, and all laws inconsistent with them are in express words repealed. It does not refer in terms to that of 1873 (*supra*), but its title has relation to it, and its provisions, with those of the act of 1859 (*supra*), completely cover the subject. The mischief to be corrected was such as might arise from the errors of the board of supervisors; the mode of relief is by appeal, taken by the supervisor of the aggrieved town. The board of assessors is the appellate tribunal, and its decision is to be obeyed by the board of supervisors. So far there is no controversy between the parties, and the remaining question is, How, by whom and when shall the decision be communicated to the board of supervisors, so that they shall be made subject to it? and as to this, also, the statute is, I think, so explicit as to preclude debate. It is to be given by the State assessors, authenticated by their certificate, and mailed by them to the clerk of the board of supervisors, directed to him at his post-office address. When? Within ten days after the determination is made. This is the answer given by statute. The next step is to be taken by the board of supervisors; they are to correct the errors of which they have been convicted.

The construction contended for by the respondent would make all these provisions and proceedings depend for their efficacy upon compliance with the terms of the fourteenth section of the act of 1873, and introduce them as qualifying and controlling words. Although the appeal may be taken at any time, heard when the assessors direct, the hearing adjourned when necessary, determined at the convenience of the assessors, and their decision obeyed, yet, says the respondent, this is with a *proviso*, that " the determination is in fact filed with the clerk of the board before the first day of its session." Let us recur to the act of 1873 (*supra*), on which the statement is based. Under it the decision made by the assessors is to be filed with the clerk of the board of supervisors. But by whom? The statute does not declare. We must, therefore, suppose

either that the duty is imposed upon the board of assessors, or that they may hand the decision to the appealing party, whose interest it is to render the decision effective, and for that purpose must see to it that it is filed. These events are made impossible by the act of 1876 (*supra*). So far as the assessors are concerned, their connection with the appeal ends when they comply with the imperative command of the statute by mailing the decision. They must forward it by mail to the clerk, and the post-office department is made the agent for that purpose. They cannot deliver it to the successful supervisor; it must go to the post-office. They are not to file it themselves, but are to forward it by mail. Again, the time prescribed by the statute is different. By the act of 1873, the decision must leave the assessors' hands in such season that it may be filed " on or before the commencement of the session of the board of supervisors." By the act of 1876, they may retain it for ten days after it is made; and it may not be made until after the commencement of the session. Is it not obvious, then, that in respect to all points covered by section 14 of the act of 1873 (*supra*), the provisions of that of 1876 are inconsistent and repugnant? Indeed the conflicting claims of the parties in this case present a clear argument in favor of the appellants. Both agree that a determination has been made, and are bound to admit that if executed it will remedy injustice, but the respondent says it is of no force because it was not filed before the first day of the session of the board. In reply the appellants say it was mailed within ten days after it was made, and each disputant cites a statute sustaining his assertion. Now, if the last statute gives a complete rule on the subject, it carries with it a repeal of the other, not only by implication, because it is inconsistent, but for that reason it is also within the repealing clause. Any other conclusion renders the act of 1876 (*supra*) inoperative, and the co-existence of section 14 of the act of 1873 would in many cases (and this is one) be destructive of the object for which the scheme of review was created. The object is the correction of errors and the prevention of injustice, and no reason is perceived why this should not be effected at any time

while the matter is in the power of the board of supervisors. But it is enough for our present purpose to say that the inconsistency between the two acts is so great that they cannot both be obeyed, and the earlier must be deemed abrogated. Indeed it comes directly within every branch of the rule laid down in *Foster's Case*, Coke's Rep., pt. XI,*56 b, for the last is "contrary to it in quality, in matter, and in respect to the form prescribed;" and the cases cited by the respondent tend to no other result.

No other point is presented by the return or the demurrer. The question, therefore, whether the costs of the appeals were properly disposed of by the State assessors is not before us.

The judgment of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur, except Folger, Ch. J., taking no part.

Judgment accordingly.