In the Matter of the Town of Lewiston et al., Petitioners, against State Board of Equalization and Assessment et al., Respondents.

Third Department, May 8, 1957.

*Hugh B. Chace, Jr.,* for petitioners.

*J. Wesley Andrews* for Town of Newfane, petitioner.

*Richard C. Doherty* for Town of Porter, petitioner.

*Henry W. Schmidt* for Town of Wheatfield, petitioner.

*Paul C. Stolzenfels* for City of North Tonawanda, petitioner.

*Louis J. Lefkowitz, Attorney-General (John R. Davison, James O. Moore, Jr., Edward J. Grogan, Jr.,* and *Milton Alpert* of counsel), for State Board of Equalization and Assessment and others, respondents.

*V. Sumner Carroll* for County of Niagara, respondent.

*Clarence Greenwald, Corporation Counsel (Ralph A. Boniello* of counsel), for City of Niagara Falls, respondent.

*W. Harwood Hooper* for City of Lockport, respondent.

*Anthony L. Pusateri* for Town of Hartland and another, respondents.

*A. Russell Leone* for Town of Niagara, respondent.

*Ronald M. Hall* for Town of Pendleton, respondent.

BERGAN, J. This appeal involves an interpretation of section 176-a of the Tax Law and the validity of proceedings taken by its authority to review the equalization among tax districts within the County of Niagara of assessments for county tax purposes.

Power to equalize assessments within a county to effect an equitable distribution of the county real estate tax is vested in the Board of Supervisors. This authority derives from section 50 of the Tax Law which directs the supervisors annually to examine " the assessment-rolls of the several tax districts " of the county to see " whether the valuations in one tax district bear a just relation to the valuations in all the tax districts " of the county.

As a result of such a statutory inquiry the supervisors have the power to increase or diminish " the aggregate valuations " of real estate " in any tax district " of the county. A formula is set forth in section 50, setting up how this is to be done, which, among other things, requires the supervisors to establish the " ratio or percentage " which the assessed value in the tax district bears to " its full value ".

This establishment of a ratio or percentage, in practice, does not mean that the supervisors reassess for the purpose of equalization of county taxes on real estate each individual assessment;

rather, it means, in practice, that by sampling or other reliable formula the supervisors find a fair ratio of assessed value to real value for all the tax districts of the county so that for the purposes of county taxes the burden shall be borne fairly and in accordance with full value among the several tax districts. This necessarily means a judgment by the supervisors as to what is " full value " in each tax district.

This power of change of ratios among tax districts is itself subject to examination and revision by the State Tax Commission. The powers and duties of the Tax Commission in this area are temporarily vested in the State Board of Equalization and Assessment created by Laws of 1949 (ch. 346) and continued to 1959 by Laws of 1956 (ch. 189). This temporary commission is the main respondent here and is referred to herein as " the Board ".

One method by which the board may revise the ratios is on " appeal " by certain public officers of tax districts affected by the equalization, in pursuance of sections 175 and 176 of the Tax Law; and the other is the " review " authorized by section 176-a. It is the scope of this review — how far it may go, upon what record it may be based — that is the core of the controversy in this case.

The petitioners argue in effect that the review by the board is limited to an examination of the computations and material on the face of the determinations by which the supervisors equalized the assessments among the tax districts in the county. The respondents contend that the board may reach its own determinations of full value in the various tax districts and make directions for county equalization among the tax districts in accordance with those determinations if they differ from those of the supervisors.

On November 12, 1954 the Board of Supervisors of Niagara County established the equalization rates among the tax districts of the county in pursuance of section 50 of the Tax Law. The Mayor of the City of Niagara Falls on November 26 filed a formal application with the board alleging that the equalization made by the supervisors was unjust and inequitable to the taxpayers of the city and asking that the equalization as thus promulgated be annulled and that a " new, equitable and just equalization " be made by the board.

Notice having been given to the county and to all tax districts, the board conducted a hearing on December 17, 1954 and at later dates; and evidence was offered by the City of Niagara Falls and by the Town of Lewiston. The hearing examiner thereafter made a report to the board containing his recom-

mendations as to revisions of the equalization ratios as made by the supervisors.

The report was adopted by the board in an order of November 16, 1955. This order fixed and determined the equalization rates for each of the tax districts of Niagara County and directed that such rates supersede those which were established in November, 1954 by the supervisors and required appropriate adjustments to be made among the tax districts.

At the hearing the chief research analyst of the board was called by the City of Niagara Falls as a witness. He testified to methods and procedures by sampling, by field examinations and by the gathering and analysis of material affecting real estate values through which the ratios of assessed to full value were reached by him and other officers of the board for State purposes. He was cross-examined in detail on these procedures.

A large volume of summaries and other material affecting value went into the record; and although the research analyst who was a witness depended for his conclusions upon reports and material which had been gathered together by other employees of the board, the material was filed in the regular course of business in the board, was co-ordinated and evaluated by the witness in the course of his official duties, and no request was made by parties now reviewing the determination to be permitted to call and examine the persons who made the basic studies and prepared the voluminous summaries which were offered in evidence and which are now before us.

Moreover there is no proof in the record of the methods by which the supervisors reached the ratios for the whole county or testimony by the persons who made the reports on which the supervisors relied.

The proof for the Town of Lewiston, one of the parties now reviewing the board's determination, was itself not in testimony form, but was in the form of an affidavit by an economist and statistician which criticized the methods and results of the board's equalization ratios and the material on which they were based and which contained certain statements relating to property values. There is nothing whatever in this proof, or in any which we are able to find in the record, which gave evidentiary support to the ratios of equalization fixed by the supervisors or to the methods used by the supervisors.

We reach the conclusion on review of the record, therefore, that full opportunity was allowed the parties here reviewing the determination (the petitioners) to controvert the evidence on which the board's determination of equalization was made; that there was a fair hearing; and that there is substantial

evidence in the record to support the equalization rates as found and determined by the board.

The " power * * * to review the equalization fixed by the board of supervisors '' vested in the board by section 176-a of the Tax Law in our opinion was not limited as a matter of law merely to seeing to it that obvious mathematical errors on the face of the statement of equalization be corrected; but necessarily included the power to hear and consider other evidence on the just relation of the assessments of each tax district to the whole on the basis of full value.

This is the duty of the supervisors under section 50; and if it is to be determined intelligently on review whether the function was properly executed, the reviewing board must necessarily be able to see for itself what full value is in the several tax districts. The document by which the supervisors fixed the equalization rate contained merely the conclusory figures of " full value " and assessed value.

Nothing of significance on " review " could be gained by merely looking at these figures and determining whether the percentages were worked out correctly mathematically. The key to the problem of review is what figures the supervisors credit as " full value " and these necessarily rested on the judgment or opinion of the supervisors or specialists who advised them.

A " hearing " is required on a section 176-a review, and " Due notice " thereof shall be given the clerk of the Board of Supervisors, who in turn is required to transmit copies of such notice to all supervisors of the county and to the mayors of any cities in the county. Such a hearing and such notice could not have been intended for a mere mathematical computation, but this language of section 176-a suggests rather an intent to authorize a review of the basis of the supervisors' determination as well as its form.

The circumstances attending the original enactment of this section in 1915 (ch. 317) and the message of the Governor leading to its enactment suggest an intent to confer on the board a power of revision based upon its finding on review of full value. The construction which the Tax Commission itself placed on its own powers of review conferred by this section shortly after its enactment throws illumination on contemporaneous understanding of intent. Reports of the Tax Commission in 1916 (pp. 8, 9, 41) and the following year (1917, pp. 41, 42) indicate that the Tax Commission then understood its power of review to include the right to take testimony on full value of the property on which county equalization had been based.

Both upon the question of the board's power and upon the sufficiency of the record on which the determination was made reviewing the Niagara equalization we are of opinion the board acted within statutory authority.

The determination should be confirmed, without costs.

FOSTER, P. J., COON, HALPERN and GIBSON, JJ., concur.

Determination confirmed, without costs.