■ In the Matter of GEORGE S. GERBER, as Supervisor of the Town of Clarkstown, et al., Petitioners, v STATE BOARD OF EQUALIZATION AND ASSESSMENT et al., Respondents.—Proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the respondent State Board of Equalization and Assessment, dated March 31, 1978, which, *inter alia,* determined

---

that the equalization rates made by the Rockland County Board of Legislators on December 19, 1974 are fair and equitable. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. In our opinion the determination under review was supported by substantial evidence and must be confirmed (see *Matter of Town of Lewiston v State Bd. of Equalization & Assessment*, 3 AD2d 498, affd 5 NY2d 741). The following is among the evidence bearing upon the propriety of the determination in issue: In 1973 the Town of Ramapo and in 1974 the Town of Clarkstown completed reassessments purportedly at 100% of actual value. By letter dated August 6, 1974 the State Board of Equalization and Assessment (SBEA) advised the Town of Clarkstown (a petitioner herein) that: "The following special equalization rate has been established by the State Board of Equalization and Assessment, pursuant to Section 1314 of the Real Property Tax Law. This rate is to be used for the purpose of apportioning 1974-75 school taxes only, in all districts where state equalization rates and the assessment rolls completed in 1974 are used for such purposes.

| TOWN | COUNTY | FINAL 1973 RATE | SPECIAL EQUALIZATION RATE |
|------|--------|-----------------|---------------------------|
| Clarkstown | Rockland | 19 | 173" |

The Town of Ramapo received a similar notice (dated July 29, 1974) from the SBEA advising that its special equalization rate had been established at 144. Thus, despite reassessment purportedly at 100%, the "August" equalization rates of the Towns of Clarkstown and Ramapo were well above 100% and showed a difference of 29% from each other. William D. McKever, Director of the Bureau of Equalization Rates of the SBEA, testified that: "A. * * * a study was made to determine why such a difference in the special rates for Clarkstown and Ramapo when both claimed to be acting at 100 percent of current market value. Q. Now, hold it one second, When you say the 'special rate,' you mean the August rate? A. Yes. Q. Which was 173 for Clarkstown and one forty something for Ramapo, wasn't it? A. Something, like that. The special rate for school purposes were based on 1970 market values, and Rockland County was—or at least the Towns of Clarkstown and Ramapo claimed to be assessing at 100 percent of then current 1974 market values, so an effort was made to determine if our most recent data would reflect a different relationship than the 1970 price level. Our most recent data at that time was the 1973 survey, which was nearing completion." McKever testified that results of the 1973 survey coming in were showing: "A. The sales indicated that the ratio of assessed value to marke[t] value was quite similar in both towns, Clarkstown and Ramapo. Q. 'Similar' meaning what—similar correct, similar incorrect, similar high, similar low? A. No, they both were practically the same, about 94 percent on the average." In early November, 1974 the SBEA's 1973 survey had been completed for Rockland County but was completed only as to 10% of the rest of the State. On November 20, 1974 McKever wrote to the clerk of the Rockland County Legislature that: "As you know, each year we provide advisory ratios to those counties which use state equalization rates to apportion the general county tax levy. Ordinarily these advisory ratios are merely a mathematical adjustment of the regular state equalization rate for the prior roll which takes into account any change in level of assessment made by the assessor on the current roll. However, the regular state equalization rates reflect a 1970 market value, and our newly completed 1973 market value study shows that there have been substantial, non-

uniform increases in market value throughout Rockland County. Accordingly, so that you may reflect the most up to date market value possible in your county equalization, we are providing you with advisory ratios which are based on a January 1973 price level, as follows:

| TOWN | ADVISORY RATIO |
|------|----------------|
| Clarkstown | 109 |
| Haverstraw | 31 |
| Orangetown | 20 |
| Ramapo | 104 |
| Stony Point | 9" |

McKever further testified: "Q. I understand. I mean actually the new rate put Clarkstown much closer to Ramapo, isn't that correct? and this is with 109 to 104? A. Yes." However, on December 4, 1974 the SBEA adopted the following resolution: "I. FULL VALUE STANDARD FOR STATE EQUALIZATION RATES FOR 1974 ASSESSMENT ROLLS OF CITIES AND TOWNS RESOLVED, That as recommended in Memorandum No. 1 of the attached agenda dated December 4, 1974, the Board adopt an average of 1970 and 1973 surveys which gives double weight to 1973 as the standard for state equalization rates for the assessment rolls of cities and towns completed in 1974." By letter dated December 6, 1974 SBEA counsel Thomas McGrath advised the County Attorney of Rockland County: "In accordance with our telephone conversation, this is to advise that the State Board of Equalization and Assessment on December 4, 1974 for the purpose of performing its statutory responsibilities with respect to the establishment of equalization rates for assessment rolls completed in 1974 has set the full value standard for such purpose. The standard adopted is an average of the 1970 and 1973 market value surveys with double weight given to the 1973 survey. This is the standard that will be applied state-wide for each of the 1000 cities and towns for which state equalization rates are established. This standard follows the Board's *established practice* of utilizing an average where a new survey is to be used for the first time and smooths the transition period where a new survey reflected a substantial increase in market value over the prior survey. Attached is a table showing the market value ratios for the towns in Rockland County based on a 1970 price level, a 1973 price level and the average of such price levels giving double weight to 1973. We have supplied the Town of Clarkstown with the data which supports the 1973 survey and they are presently reviewing such data" (emphasis supplied). Attached to Mr. McGrath's letter was a compilation of equalization rates derived from (1) the 1970 survey alone (which were essentially the August rates), (2) the 1973 survey alone (essentially the November rates), and (3) the 1970 survey combined with a double weighting of the 1973 survey (essentially the December rates):

| | "1970 SURVEY | 1973 SURVEY | 1970 AND 1973 SURVEY (WEIGHTED—1:2) |
|---|---|---|---|
| Clarkstown | 173.24 | 109.46 | 124.77 |
| Haverstraw | 40.97 | 31.60 | 34.21 |
| Orangetown | 25.14 | 20.32 | 21.71 |
| Ramapo | 143.84 | 105.48 | 115.77 |
| Stony Point | 12.93 | 8.90 | 9.93" |

However, significantly and correctly, the letter from SBEA's counsel also advised the County of Rockland that: "The advisory ratios previously

forwarded to the County by the staff of the Board reflected the use of the 1973 market value study alone. These were sent prior to the decision of the Board to average 1970 and 1973 surveys. The figures on the attached table for 1973 differ slightly from the figures previously supplied for Haverstraw and Ramapo resulting from the removal from our data of sales of condominium property. The attached table is set forth in decimals since all equalization rates made by the State Board for 1974 rolls will be made to four decimal points. The so-called county advisory ratios furnished by the staff of the Board are exactly that—'advisory'—and are furnished in an effort to be of help to those counties which do not wish to perform their own investigations with respect to the full value of the various localities in the county. There is no obligation to use these advisory ratios and in fact several counties establish their own ratios based on independent investigation or their own survey which may result in the use of even more current market value information. *This apportionment is a local determination and the only statutory requirement is that it be 'fair and equitable' in relation to the full value as determined by the county. Whether the county chooses to establish rates based on the State Board's latest market value survey alone,* or chooses to use a simple average or a weighted average of the two latest surveys (as the Board itself is doing) *is for the county to determine.* As you know, the county has the sole responsibility for the apportionment of county taxes (Real Property Tax Law, § 804). After such apportionment, the State Board's only role with respect to such apportionment would be to review the apportionment upon complaint of any of the affected municipalities. The Board's review is limited to a review of the equalization made by the county and it is required to determine whether such apportionment is fair and equitable. *In my opinion, based upon prior actions of the Board with respect to the review of county equalization, the use of an average* whether it be a simple average or with double weight to the latest survey *or the use of the latest survey alone would not result in such an inequitable apportionment as to cause any change in the county determination by the Board"* (emphasis supplied). On December 19, 1974, the county legislature adopted the November advisory as county equalization rates, which rates were derived solely from the 1973 survey. The rates thus adopted were: Clarkstown—109%; Haverstraw—31%; Orangetown—20%; Ramapo—104%; Stony Point —9%. The county's resolution of December 19, 1974, stated: "WHEREAS, it has been the customary practice of the Legislature of Rockland County to adopt the advisory rates established by the staff of the State Board of Equalization and Assessment as the equalization rates to apportion the general County tax levy, and WHEREAS, the staff advisory rates were forwarded to Rockland County Legislature on November 20, 1974, and WHEREAS, said advisory rates reflect the 1973 market value study recently completed by the staff of the State Board of Equalization and Assessment, and WHEREAS, the special equalization rate forwarded to the Towns of Rockland County in August of 1974 for the purpose of apportioning 1974-75 school taxes only reflected a 1970 market value, and WHEREAS, in the opinion of the Legislature the said advisory rates received on November 20, 1974 reflect the most up-to-date information and a fair and equitable apportionment of taxes by the various towns, based upon the actual market value of taxable real property within each town". Petitioner Town of Clarkstown filed with the SBEA a complaint and application for review of the said equalization rates made by the Rockland County Board of Legislators. After extensive hearings the hearing officer recommended denial of the complaint and confirmation of the equalization rates made by the Rockland

County Legislature on December 19, 1974. Subsequently, the final report of the hearing officer was adopted and approved by the SBEA. In short, Rockland County exercised one of the permissible options noted in the December 6, 1974 letter from SBEA's counsel and, as foreshadowed in the words of that letter, the SBEA subsequently concluded that "the use of the latest survey alone would not result in such an inequitable apportionment as to cause any change in the county determination by the Board". It is obvious that undervaluation of the value of the taxable property in the Town of Clarkstown would permit its citizens to pay less than their fair share of county taxes. This would be unfair and inequitable to the taxpaying citizens of other towns in Rockland County. We have considered all of petitioners' contentions but find no basis for disturbing the determination under review. As in *Matter of Town of Lewiston v Board of Equalization & Assessment* (3 AD2d 498, 501-502, affd 5 NY2d 741, *supra*): "We reach the conclusion on review of the record, therefore, that full opportunity was allowed the parties here reviewing the determination (the petitioners) to controvert the evidence on which the board's determination of equalization was made; that there was a fair hearing; and that there is substantial evidence in the record to support the equalization rates as found and determined by the board." O'Connor, J. P., Lazer, Gulotta and Mangano, JJ., concur.