In the Matter of TOWN OF BEDFORD et al., Petitioners, v STATE BOARD OF EQUALIZATION AND ASSESSMENT, Respondent, and TOWN OF MOUNT PLEASANT et al., Intervenors-Respondents. (Proceeding No. 1.)

In the Matter of TOWN OF MAMARONECK et al., Petitioners, v STATE BOARD OF EQUALIZATION AND ASSESSMENT, Respondent, and TOWN OF MOUNT PLEASANT et al., Intervenors-Respondents. (Proceeding No. 2.) (And two other proceedings.)

Third Department, October 11, 1979

214

APPEARANCES OF COUNSEL

*McCarthy, Fingar, Donovan, Glatthaar, Drazen & Smith (Henry J. Smith* of counsel), for Town of Bedford and others, petitioners.

*Marvin S. Fink* for Town of Mamaroneck and others, petitioners.

*Robert Abrams,* Attorney-General *(Lawrence J. Logan* and

*Shirley Adelson Siegel* of counsel), for State Board of Equalization and Assessment, respondent.

*Whiteman, Osterman & Hanna (Michael Whiteman* of counsel), for Town of Mount Pleasant and others, intervenors-respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

Pursuant to article 8 of the Real Property Tax Law and article VI of the Westchester County Charter (L 1937, ch 617, as amd), the Westchester County Tax Commission annually fixed the equalization rates for the towns and cities of Westchester County for the purpose of apportioning county taxes. The taxes in a given year were apportioned on the basis of the county equalization rates established for the prior year.

On December 16, 1971, the County Tax Commission filed with the Westchester County Board of Legislators the 1971 county equalization rates. On February 7, 1972, the County Board of Legislators used these equalization rates in apportioning the 1972 county taxes. On February 17, 1972, the Town of New Castle sought to challenge the 1971 county equalization rates by mailing a notice of appeal to the State Board of Equalization and Assessment (SBEA) and serving the County Clerk, County Executive, County Tax Commission, and County Board of Legislators with copies thereof.

Following hearings held throughout the latter half of 1972, the hearing officer issued a final report on October 17, 1973, which concluded that the 1971 county equalization rates were unfair and inequitable, and recommended that these rates be replaced by the 1971 State advisory rates previously released by the SBEA. The SBEA, acting through its executive director, did not accept this final report, but requested the hearing officer to conduct additional hearings for the purpose of receiving further testimony. It appears that the reason for holding further hearings was to allow the record to contain an SBEA study of the full value in 1970 of real property in Westchester County, which study was not completed until 1973. Upon completion of these additional hearings, the hearing officer, on July 15, 1975, issued a revised final report recommending that the SBEA substitute the equalization rates based on its own 1970 market value survey for those set by the County Tax Commission.

While these proceedings concerning the 1971 county equalization rates were taking place, the County Tax Commission, on January 15, 1973, filed the 1972 county equalization rates with the County Board of Legislators, which apportioned the 1973 county taxes on February 5, 1973. The City of Rye commenced a proceeding to review the 1972 equalization rates by complaint and application for review dated February 14, 1973. Hearings were held in May of 1974 and on July 15, 1975 the hearing officer issued his final report. This report, like the one reviewing the 1971 equalization rates, found the county's 1972 equalization rates unfair and inequitable and recommended that they be replaced by those based on the 1970 market value survey.

On February 2, 1978, the SBEA issued orders confirming the final reports of the hearing officer and directing that the 1971 and 1972 equalization rates based on the 1970 market value survey be substituted for the county rates. Four different article 78 proceedings were then commenced to challenge the orders issued by the SBEA which, after the intervenors-respondents were granted permission to intervene in all four proceedings, were transferred to this court by Special Term.

Petitioners argue that the SBEA was without jurisdiction to review the county equalization rates for 1971 and 1972 since the applications for review were not timely filed. Prior to the enactment of chapter 615 of the Laws of 1972, review by the SBEA of the equalization rates established by the County Tax Commission could be initiated pursuant to three different statutes. Section 812 of the Real Property Tax Law allowed cities or towns to appeal within 30 days of the date on which the County Tax Commission filed the equalization rates with the County Board of Legislators. Section 816 of the Real Property Tax Law gave both aggrieved taxpayers and municipalities the right to seek review by the SBEA within 30 days of the time the equalization rates were filed with the county legislature. Finally, section 33 of the Westchester County Charter (L 1937, ch 617, as amd) allowed cities and towns to appeal within 10 days of the time at which the county taxes were apportioned by the County Board of Legislators. Chapter 615 of the Laws of 1972, which became effective on May 24, 1972, expressly repealed section 812 of the Real Property Tax Law and stated that review under section 816 would be the exclusive remedy for the adjudication of complaints relating to county equalization, "[n]otwithstanding any general, special,

local, charter or other law". Thus, the appeal from the 1971 county equalization rates is timely if it complied with any of the three statutes, while the only provision governing the application for review of the 1972 rates is section 816 of the Real Property Tax Law.

■ The Town of New Castle's attempt to appeal the 1971 equalization rates was timely under section 33 of the Westchester County Charter. The Town of New Castle filed its notice of appeal with all of the appropriate officials on the 10th day following the apportionment of taxes by the county legislature, with one exception. Rather than *filing* a notice of appeal with the SBEA within 10 days, the Town of New Castle *mailed* its notice to the SBEA on the 10th day. Despite petitioners' argument that a notice of appeal mailed on February 17, 1972 cannot be considered filed on that date, where, as here, the notice is actually received, the Town of New Castle will be deemed in substantial compliance with the law *(Sweeney v City of New York,* 225 NY 271, 275; *People ex rel. Board of Supervisors of Westchester County v Hadley,* 76 NY 337, 342).

Turning to the City of Rye's attempt to challenge the 1972 equalization rates, it is not clear from the record whether the application for review was mailed or delivered to the SBEA on February 14, 1973. If delivered on that date, then clearly it was timely under section 816 of the Real Property Tax Law, since it was within 30 days of the filing of the equalization rates with the county legislature on January 15, 1973. Even if the application for review was mailed on February 14, 1973, this should be considered in substantial compliance with section 816 and the application held timely *(Sweeney v City of New York, supra; People ex rel. Board of Supervisors of Westchester County v Hadley, supra).*

■ Petitioners also contend that it was improper for the executive director of the SBEA to return the hearing officer's final report of October 17, 1973 so that further hearings could be conducted and additional evidence not previously available could be considered. This was entirely consistent with the role of the executive director who, as head of the division, must insure that all available evidence be considered by the hearing officer so that the board members can intelligently review the county rates (see Real Property Tax Law, § 201).

Nor was it improper for the SBEA to consider evidence which was not available to the county officials when they

established their rates. The SBEA, in reviewing county equalization rates, must "determine whether such equalization is fair and equitable and if not, what corrections should be made" (Real Property Tax Law, § 818, subd 1). Neither the statute nor the regulations issued under it restrict the evidence that may be received in a review of county rates (see 9 NYCRR 186.8). The SBEA is entitled to consider all available evidence relevant to the rates under review *(Matter of Town of Lewiston v State Bd. of Equalization & Assessment,* 3 AD2d 498, 502, affd 5 NY2d 741), and the fact that the 1970 market value survey was not completed when county officials established their rates does not make its subsequent consideration by the SBEA improper.

█ Notwithstanding petitioners' argument to the contrary, the determinations made by the SBEA that the 1971 and 1972 county equalization rates were unfair and inequitable are supported by substantial evidence. Testimony established that the County Tax Commission did not use scientific principles of sampling in selecting sample parcels to be appraised. Instead, they engaged in "judgmental sampling", a procedure in which an individual selects a sample which he hopes will represent a cross section of the population. Further testimony also cast suspicion on the appraisal methods used by the County Tax Commission. It appears that appraisals were made without entering the premises and often were completed in under 10 minutes. Commercial property was often appraised without the benefit of income and expense data. An expert witness testified that the county methodology had no statistical validity. Thus, the record contains ample support for the findings concerning the county equalization rates, and the SBEA's decision to substitute the rates based on the 1970 market value survey was not arbitrary or capricious.

One final point raised by some of the petitioners is that use of the SBEA rates will create inequities in the apportionment of taxes in joint school districts. That question is not properly raised in these proceedings since the procedure for resolving that issue is an application for a special equalization rate under section 1314 of the Real Property Tax Law *(Matter of Town of Smithtown v Moore,* 11 NY2d 238, 248).

The determinations should be confirmed, without costs, and the petitions dismissed.

SWEENEY, STALEY, JR., MAIN and HERLIHY, JJ., concur.

Determinations confirmed, without costs, and petitions dismissed.