In the Matter of TOWN OF MOUNT KISCO et al., Petitioners, v STATE BOARD OF EQUALIZATION AND ASSESSMENT et al., Respondents, and TOWN OF SCARSDALE, Intervenor-Respondent.

Third Department, May 24, 1984

APPEARANCES OF COUNSEL

*Galef & Jacobs (Lawrence Dittelman* and *Hazel W. Nourse* of counsel), for petitioners.

*Robert Abrams, Attorney-General (John Q. Driscoll* and *William J. Kogan* of counsel), for State Board of Equalization and Assessment, respondent.

*Marvin S. Fink* for intervenor-respondent.

OPINION OF THE COURT

WEISS, J.

Pursuant to section 122.61 of the Westchester County Charter, each year the county's Tax Commission adopts the latest State Board of Equalization and Assessment (SBEA) schedule of equalization rates to establish the equalization rate for the towns and cities of Westchester County for purposes of apportioning county taxes. Here, the Tax Commission adopted and utilized the SBEA 1980 advisory schedule of equalization rates as the county 1980 equalization rate schedule in finalizing their 1981 real property assessments.[1] It appears that the 1980 SBEA advisory rates were based substantially on the 1979 final State equalization rates, as adjusted to reflect changes in assessment levels. This 1979 final rate was established on the basis of the SBEA's 1976 market value survey of various properties.

Claiming that the 1980 county tentative equalization rate schedule was inequitable and unjust, and that the SBEA methodology in appraising certain condominium units in the Town of Mount Kisco was not as required by law (Real Property Law, § 339-y), petitioners made timely complaints to the SBEA (Real Property Tax Law, § 816). Prior to a hearing, the SBEA issued its final 1980 State equalization rate schedule in August, 1981. This schedule incorporated reduced valuations for 14 properties in petitioners' municipalities which were used in the 1976 SBEA property survey and the final 1979 State equalization rate schedule. During a two-day hearing before the SBEA,

---

1. While the advisory rate schedule is preliminary and its use not specifically authorized by the Real Property Tax Law, adoption of the State advisory equalization rate schedule for purposes of establishing county equalization rate schedules has been judicially sanctioned (see *Morabito v Westchester County Bd. of Legislators,* 73 AD2d 665).

petitioners argued that the reduced valuation reflected in the final 1980 State rates should be adopted in the county's 1980 equalization rate schedule. The hearing officer agreed, but further determined that petitioners waived their challenge to other specific property valuations and methodology used in preparing the 1980 State advisory rates by failing to challenge the very same property valuations and methodology as utilized in the 1979 State equalization rate proceeding.[2] The SBEA confirmed the findings of fact made by the hearing officer but determined that the 1980 county equalization rates adopted by the Westchester County Tax Commission for apportionment of 1981 county taxes was fair and equitable. The SBEA agreed that petitioners were estopped from challenging the use of certain valuations in determining the 1980 county equalization rates. This CPLR article 78 proceeding was commenced by petitioners, in which the Town of Scarsdale was granted permission to intervene, and was transferred to this court.

■ The SBEA's determination should be confirmed. In reviewing county equalization rates, the SBEA is required to "determine whether such equalization is fair and equitable and if not, what corrections should be made" (Real Property Tax Law, § 818, subd 1). The SBEA is entitled to consider all available evidence relevant to the rates under review, without restriction (*Matter of Town of Bedford v State Bd. of Equalization & Assessment*, 70 AD2d 213, 217-218, mot for lv to app den 48 NY2d 610). Accordingly, when the SBEA incorporated the 1980 valuation changes made to the 1976 market value survey into the final 1980 State rates, a similar change could have been made in the 1980 county rates. That such evidence was not available when the county adopted the 1980 State advisory rates is not controlling (70 AD2d, at p 218). This is not to suggest, however, that the SBEA erred in deciding not to incorporate these valuation changes into the 1980 county rate schedule. Here, the record indicates that the adoption of the reduced valuation appraisals would have changed the apportionment of taxes by plus 2.06% in the Town of Pound Ridge and minus 1.52% in the Town of Mount Kisco, with

---

**2.** Although the Town of Mount Kisco filed a complaint in relation to the tentative State equalization rate filed in 1979, it only complained as to the valuation of one of the parcels and it did not pursue this complaint to the courts.

all other municipalities within that range. This change would effect an over-all reapportionment of only about .0015% of the total county tax, which the SBEA concluded was too minimal to render the 1980 county equalization rates inequitable. In our view, the record contains substantial evidence to support this conclusion and thus this court must confirm the SBEA's determination (see *Matter of Town of Smithtown v Moore,* 11 NY2d 238, 247; *Matter of Gerber v State Bd. of Equalization & Assessment,* 71 AD2d 951, mot for lv to app den 48 NY2d 608).

■ Petitioners further contend that the SBEA erred as to certain valuations and methodology upon which both the 1980 State advisory rates and the 1979 State final equalization rates were based. As noted above, these rates are reflected in the 1980 county equalization rate schedule. The SBEA determined that since petitioners failed to exhaust their administrative and judicial remedies in relation to the final 1979 State rates, they were estopped from pursuing this challenge in the instant proceeding. We agree. Neither party controverts petitioners' right to seek review of the 1980 county equalization rates pursuant to section 816 of the Real Property Tax Law. The difficulty herein is whether the property valuations underlying the 1979 final State rate may also be challenged. It is undisputed that petitioners could have sought review by the SBEA of the 1979 State equalization rate schedule (see Real Property Tax Law, §§ 816, 830, 1200-1218; 9 NYCRR subpart 186-11).[3] Such a review would have afforded scrutiny of the valuations and methodology employed in the 1976 market survey, which petitioners presently contend was erroneous. By not challenging the 1979 final State equalization rate schedule, petitioners implicitly accepted and relied upon that schedule in assessing and collecting its taxes during 1980. Having so acted, petitioners should not now be allowed to assert that the 1979 ratios were incorrect. While we recognize that the absence of a prior administrative or judicial determination of the issues pre-

---

**3.** Section 760 of the Real Property Tax Law, which provided for administrative and judicial review of final determinations of the SBEA relating to county and State equalization rates, has been repealed (L 1982, ch 714, § 25, eff Jan. 1, 1983). The substance of that section was transferred to articles 8 and 12 of the Real Property Tax Law.

cludes the application of the doctrine of collateral estoppel (*Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 21), a nonetheless equally effective estoppel resulted from petitioners' aforesaid actions (*Central Buffalo Project Corp. v City of Buffalo,* 74 AD2d 336, affd 52 NY2d 986). We therefore conclude that the SBEA determination which held that petitioners were estopped from challenging certain property valuations underlying the 1979 final State equalization rates was entirely correct.

The determination should be confirmed, and the petition dismissed, without costs.

LEVINE, J. (dissenting). Respondents in this case do not seriously contest that the 1980 equalization ratios adopted by the Westchester County Tax Commission (the county) were flawed in two major respects. The first of these relates to evaluations of 14 representative properties in the course of the SBEA's 1976 market survey. The SBEA acknowledges that these evaluations were erroneous when made and corrected them in establishing its 1980 final equalization rates prior to the hearing which took place in the instant proceeding. Correction of this error would entail the shift of more than $186,000 in tax burden among the various towns of the county. The second error relates to the methodology employed by the SBEA in evaluating certain individual condominium units, which were appraised without reference to the value of the condominium complex as a whole, in apparent violation of section 339-y of the Real Property Law.

The SBEA and the majority rationalize disregard of these defects in the county rate structure on two alternative grounds. The first is that the failure of petitioners to challenge the 1979 SBEA equalization rates administratively and then judicially under article 12 of the Real Property Tax Law somehow forecloses them from exercising their statutory right to challenge the 1980 county rates under section 816 of the Real Property Tax Law because the county rates were based on the 1980 SBEA advisory rates which in turn were based essentially upon the 1979 SBEA final rates. In our view, applying such a preclusion creates a dangerous precedent for review of assessment and equalization matters in general and unduly restricts

the remedy to contest county equalization rates accorded local municipalities under section 816 of the Real Property Tax Law. The latter potential result of the majority's position is particularly foreboding because at present, we are told, all but two counties in the State follow the practice of adopting the SBEA advisory rates as their equalization rates rather than making their own independent determinations.

The SBEA based its theory of preclusion solely upon the doctrine of failure to exhaust administrative remedies. It held that petitioners were "estopped from seeking further review" in this proceeding challenging the county rates "by reason of the failure of the complainant towns to exhaust their administrative and judicial remedies in relation to the establishment of the final State equalization rates for assessment rolls completed in 1979". This rationale necessarily implies that where county rates are set by adopting the SBEA advisory rates, an aggrieved local municipality is relegated exclusively to exhausting its remedies for review of the SBEA rates for the prior year in a proceeding under article 12 of the Real Property Tax Law. The short answer to that position is that even though the Legislature must have been well aware of the prevalent county practice of adopting the SBEA advisory rates from the preceding year, it did not choose to make the review procedures of article 12 an exclusive remedy so as to bar subsequent resort to the review of county rates provided under section 816 of the Real Property Tax Law.* The statutory option to challenge rates under either article 12 or section 816 was left entirely open. When two such alternative statutory review procedures are thus provided, an aggrieved party need not exhaust his remedies under one before availing himself of those under the other (see *Matter of Smith v Hoyt,* 59 AD2d 1058, 1059). This court's decision in *Matter of Town of Bedford v State Bd. of Equalization & Assessment* (70 AD2d 213, mot for lv to app den 48 NY2d 610) implicitly applies that principle to equalization review

---

* Indeed, when the Legislature repealed the alternative review procedure under section 812 of the Real Property Tax Law (L 1972, ch 615), it expressly stated that review under section 816 would be the exclusive remedy for the adjudication of complaints relating to county equalization rates (L 1972, ch 615, § 9). No comparable provision was inserted in article 12.

matters in sanctioning the right of the petitioners therein to use any one of the three alternative statutory rate review procedures available in that case. There are particularly far-reaching consequences to this basis of determination. Under it, local municipalities are limited to a direct attack on the SBEA ratios under article 12 when those ratios form the basis for their county's equalization rate schedule the next succeeding year. As previously noted, county adoption of the prior year's SBEA rates is a pervasive practice throughout the State. Acceptance of the SBEA's theory of preclusion thus has the effect, State-wide, of virtually removing section 816 from the statute books as a vehicle for full review of county equalization rates by local municipalities. Such a result could hardly have been intended by the Legislature.

The majority's decision adopts a different rationale to preclude petitioners' attack on the merits because of their failure to have challenged the SBEA rates for the proceeding year, apparently based on a theory of equitable estoppel. The majority states, "By not challenging the 1979 final State equalization rate schedule, petitioners implicitly accepted and relied upon that schedule in assessing and collecting its taxes during 1980. Having so acted, petitioners should not now be allowed to assert that the 1979 ratios were incorrect." In basing its preclusion of petitioners' challenge to the 1980 county rates on a theory of equitable estoppel, the majority invokes a ground for upholding the SBEA that the agency itself did not employ in reaching its determination. As the previously quoted excerpt from the SBEA's decision and order conclusively demonstrates, the SBEA's sole basis for invoking an estoppel against petitioners was their "failure to exhaust their administrative and judicial remedies" with respect to the SBEA's final 1979 rates. The Court of Appeals has recently reminded us that "[j]udicial review of an administrative determination is limited to the grounds invoked by the agency and a reviewing court which finds those grounds insufficient or improper may not sustain the determination by substituting what it deems to be a more appropriate or proper basis" (*Matter of Parkmed Assoc. v New York State Tax Comm.*, 60 NY2d 935, 936). Moreover, the record affords no support

for the majority's new finding that petitioners collected taxes in 1980 on the basis of the SBEA's 1979 final rates. If anything, the evidence suggests the opposite conclusion. As the majority correctly notes, the SBEA adopted its final *1980* rates in August, 1981. It can fairly be inferred from this that the SBEA's final *1979* rates (these being the rates under attack here) were determined about a year earlier, i.e., about August, 1980. Since the towns which are petitioners in this proceeding collected their 1980 taxes in January of that year, we find it difficult to understand how those taxes could have been collected on the basis of an SBEA 1979 final rate schedule which had not been determined until more than six months later.

There is nothing in the record establishing or even suggesting that petitioners used the 1979 SBEA rates to any advantage whatsoever. Certainly there is no evidence that petitioners used the 1979 rates as the basis for enlarging their constitutional taxing powers, as was found to be the case in *Central Buffalo Project Corp. v City of Buffalo* (74 AD2d 336, 340-341, affd 52 NY2d 986), relied upon by the majority on this issue. Moreover, applying an estoppel here would be manifestly unjust, since the principal error in evaluations cited by petitioners was not discovered, even by the SBEA, until *after* the 1979 rates had become final.

Last to be discussed is the majority's (and the SBEA's) alternative ground for denying relief to petitioners, namely, that the effect of the SBEA's erroneous evaluations and methodology was so small in terms of the apportionment of county taxes among the various towns and cities as not to disturb the "rough equality" in treatment which the law requires and that, therefore, despite the admitted errors, there was substantial evidence to support the SBEA's ultimate finding that the county rates were "fair and equitable". The issues raised by petitioners go beyond the customary substantial evidence question, however. In exercising its review powers under article 8 of the Real Property Tax Law, the SBEA clearly has the right and duty to correct manifest errors in county equalization ratios (*Matter of Town of Bedford v State Bd. of Equalization & Assessment,* 70 AD2d 213, *supra*). It is equally clear that, although purportedly finding that the county rates

here were fair and equitable, the SBEA did not conduct its hearing in a manner which permitted full and fair consideration of petitioners' specific complaints. To the contrary, the SBEA simply ignored undeniably erroneous evaluations resulting in a misallocation of tax burdens among the localities in the not insignificant sum of $186,000, an error which the SBEA itself corrected in its 1980 rates before the hearing in this matter was even held. The SBEA also failed totally to address other demonstrated errors in methodology which were apparently in violation of a specific statutory directive. Such disregard of uncontested evidence and of an express statutory mandate has always been held to constitute the kind of arbitrary and capricious administrative determination which courts annul despite the admittedly limited scope of judicial review (see, e.g., *Matter of Board of Educ. v Nyquist,* 48 NY2d 97, 103; *Matter of New York Tel. Co. v Public Serv. Comm.,* 64 AD2d 232, 241-243, mot for lv to app den 46 NY2d 710; *Rochester Gas & Elec. Corp. v Public Serv. Comm.,* 64 AD2d 345, 349, affd 51 NY2d 823; *Matter of Duncan v Nyquist,* 43 AD2d 630, 632). We see no reason why the SBEA should be afforded greater immunity from judicial review than other administrative decision makers.

The Court of Appeals decision in *Matter of Town of Smithtown v Moore* (11 NY2d 238) does not require a contrary result. In that case, the erroneous evaluations complained of by the town were based upon data furnished to the SBEA by the town's assessors. Thus, as the Court of Appeals indicated, the town could hardly complain that the SBEA was arbitrary or capricious in using those evaluations (*supra,* at p 247).

For the foregoing reasons, the SBEA's determination should be annulled and the matter remitted for further proceedings not inconsistent herewith.

KANE and CASEY, JJ., concur with WEISS, J.; MAHONEY, P. J., and LEVINE, J., dissent and vote to annul in an opinion by LEVINE, J.

Determination confirmed, and petition dismissed, without costs.